1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE SDG&E CONSOLIDATED CASES. | Case No. 17-cv-02433-BAS-JLB<br>Consolidated Case Nos.<br>(1) 18-cv-01389-BAS-JLB<br>(2) 18-cv-01390-BAS-JLB<br>(3) 18-cv-01561-BAS-JLB<br><br>**ORDER**<br><br>**(1) DENYING DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS (ECF No. 115);**<br><br>**(2) GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE (ECF No. 115-10);**<br><br>**(3) DENYING DEFENDANT'S EVIDENTIARY OBJECTIONS (ECF No. 122-1); and**<br><br>**(4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 115).** |

17cv2433

This action arises from a gas explosion at the Camp Pendleton Marine Corps base that injured Plaintiffs. Plaintiffs are service members who were on board the Assault Amphibious Vehicle that came into contact with a natural gas pipeline during a combat readiness training. Plaintiffs brought negligence actions against Defendant SDG&E, who supplied natural gas to Camp Pendleton.

The Court is first asked to decide whether it lacks subject matter jurisdiction because this action presents a political question that is not justiciable. Because determining whether SDG&E was negligent does not call into question the military's decision-making authority, this action does not present a nonjusticiable, political question.

The Court is next asked to decide whether SDG&E's gas tariff rules, which are approved by the California Public Utilities Commission, absolve SDG&E of tort liability over the exploded gas line at issue, and, if so, whether the California Public Utilities Code preempts Plaintiffs' claims for damages. Because the gas line at issue belonged to the military, not SDG&E, Rule 26 of SDG&E's tariffs relieves SDG&E of tort liability. The Court finds that this action is preempted because allowing Plaintiffs' suit for damages would hinder the California Public Utilities Commission's regulatory authority. To the extent that Plaintiffs raise any claim that is not preempted, the Court finds no genuine issue of material fact that survives summary judgment.

## BACKGROUND

Plaintiffs Marco Alires, Alexander Cruz, and Oscar De La Rosa participated in a pre-deployment Marine Corps Combat Readiness Evaluation training that took place at the Marine Corps Base Camp Pendleton on September 13, 2017. (Joint Statement of Undisputed Material Facts, "JSUMF," ¶ 1, ECF No. 160.) Plaintiffs were traveling onboard an Assault Amphibious Vehicle ("AAV") when the AAV came in contact with a natural gas line ("Subject Gas Line"). The Subject Gas Line ruptured, leaked gas, and caused an explosion ("Subject Explosion"), injuring Plaintiffs. *Id.*

SDG&E is a public utility company that has provided natural gas to Camp Pendleton starting in the 1950s, including on the day of the Subject Explosion.  (JSUMF ¶¶ 4, 6, 9.)  The Subject Gas Line was installed in the 1970s.  (*Id.* ¶ 13.)  SDG&E did not design, construct, or install the Subject Gas Line.  (*Id.* ¶ 12.)  The Subject Gas Line was owned by the United States government at all relevant times.  (*Id.* ¶ 3.)

SDG&E has filed with the California Public Utilities Commission its tariffs, which define the terms, conditions, rates, classifications, and attendant liabilities under which SDG&E services its customers.  (*Id.* ¶ 5.)  SDG&E's contract with the Navy, which governs SDG&E's sales of gas to Camp Pendleton, incorporates SDG&E's tariffs.  (*Id.* ¶¶ 6–7.)

Plaintiffs brought negligence actions against SDG&E.  The Court consolidated Plaintiffs' actions.  (Consolidation Order, ECF No. 19.)  Plaintiffs amended their Complaints.  (Marco and Leah Alires' Amended Complaint, "Alires FAC," ECF No. 155; Alexander Cruz's Amended Complaint, "Cruz FAC," ECF No. 156; Oscar De La Rosa's Amended Complaint, "De La Rosa FAC," ECF No. 157.)

SDG&E moves to dismiss this action for lack of subject matter jurisdiction and, in the alternative, moves for summary judgment.  (ECF No. 115.)  Plaintiffs filed an Opposition (ECF No. 120), and SDG&E filed a Reply (ECF No. 122).  The Court heard oral argument on all motions.  (ECF No. 172.)  The motions are ripe for decision.

## LEGAL STANDARD

### I.   Rule 12(b)(1) Motion to Dismiss

A Rule 12(b)(1) motion tests whether a court possesses subject matter jurisdiction to adjudicate the claims in the action. Fed. R. Civ. P. 12 (b)(1); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004).  A Rule 12(b)(1) jurisdictional attack may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the complaint is challenged as failing to establish federal jurisdiction, even assuming that all of the allegations are true and construing the complaint

in light most favorable to the plaintiff.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Thus, a motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege sufficient facts to establish jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

In a factual attack, "by contrast, . . . the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage*, 343 F.3d at 1039 n.2.

## II.    Rule 56 Motion for Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the

17cv2433

nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." (citing *Anderson*, 477 U.S. at 252)). Rather, the nonmoving party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting former Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## ANALYSIS

### I. Preliminary Matters

#### A. SDG&E's Request for Judicial Notice

Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are either "(1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may also consider additional documents under the "incorporation by reference" doctrine as long as "the plaintiff's claim

depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  SDG&E requests the Court take judicial notice of the following matters:

- certain information on the Marine Corps website about Camp Pendleton, including statements that (A) Camp Pendleton has its "own utility distribution systems" and (B) Camp Pendleton's utility distribution system includes "seven sewage treatment plants, 150 miles of sewer mainlines, 24 wells, 375 miles of water mainlines, 23 reservoirs, 145 miles of gas lines, 335 miles of electrical lines, 215 electric substations and two landfills";
- Marine Corps Order 7300.21B, Marine Corps Financial Management Standard Operating Procedure Manual, Chapter 1 Authorizations and Availability of Budgetary Resources.

(Def.'s Req. Judicial Notice, ECF No. 115-10.)  Because Plaintiffs have not objected to judicial notice of these documents, the Court **GRANTS** Defendant's request and takes judicial notice of the exhibits.

### B.    SDG&E's Evidentiary Objections

SDG&E raises several evidentiary objections against Plaintiffs' evidence filed in support of their Opposition to Summary Judgment.  (Def.'s Objections, ECF No. 122-1.) For reasons stated below, the Court **DENIES** SDG&E's Objections.

#### 1.    Relevancy Objections

SDG&E raises numerous objections under Rule 402 of the Federal Rules of Evidence.  "[O]bjections for relevance are generally unnecessary on summary judgment because they are 'duplicative of the summary judgment standard itself.'"  *Sandoval v. Cty.*

*of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (citing *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)).  As the Ninth Circuit explained in *Sandoval*:

> [I]f evidence submitted on summary judgment could create a genuine dispute of material fact, it is, by definition, "of consequence in determining the action," and therefore relevant.  Conversely, if the submitted evidence does not create a genuine dispute of material fact, there is no need for the court to separately determine whether it is relevant because, even assuming it is not, it will not affect the ultimate summary judgment ruling. . . . [P]arties briefing summary judgment motions would be better served to "simply argue" the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections.

*Id.* (omitting citation).  Therefore, the Court denies SDG&E's evidentiary objections raised under Rule 402 and reviews Plaintiffs' evidence under the summary judgment standard.

## 2.    Foundation Objections

SDG&E raises several objections for lack of foundation against Plaintiffs' evidence, including the Piernie Beck Field Investigation Report (Ex. 7 to Pls.' Opp., ECF No. 120-7) and the 2000 Technical Assessment (Ex. 17 to Pls.' Opp., ECF No. 120-17).  "[A]n objection to admission of evidence on foundational grounds must give the basis for objection in a timely way to permit the possibility of cure."  *Sandoval*, 985 F.3d at 666 (citing *Jerden v. Amstutz*, 430 F.3d 1231, 1237 (9th Cir. 2005)).  SDG&E's objections—which simply state "Lacks Foundation / Speculation"—fall "well short of providing Plaintiff[s] with notice of the specific ground of objection and, consequently, what could be done to cure any defects."  *Id.*  Therefore, these objections "provide[] no basis for excluding the evidence."  *Id.*

## 3.    Authentication Objections

SDG&E argues that certain evidence, including the Piernie Beck Field Investigation Report (Ex. 7 to Pls.' Opp.) and the 2000 Technical Assessment (Ex. 17 to Pls.' Opp.), must be excluded because the evidence was not authenticated.  Documentary evidence

must be authenticated for use at the summary judgment stage. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990). Under Rule 901(b)(4), "documents . . . could be authenticated by review of their contents if they appear to be sufficiently genuine." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 n. 24 (9th Cir. 2002). This means that

> [i]f a party offers what appears to be correspondence, or for that matter a memorandum, notice, contract, statement, receipt, press release, or any other written material, and if it is on what appears to be the printed or embossed letterhead of a person, business, or any sort of corporate or other entity, such appearance alone should suffice to enable the trier of fact to conclude that the writing came from the indicated source, at least in the absence of something highly suspicious in the appearance or content of the letterhead itself or the accompanying written matter, or of counterproof indicating mistake or fraud.

5 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 9:6 (4th ed.) (collecting cases). For example, a letter and receipt may be authenticated by distinctive characteristics of letterhead and addressee. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011).

Here, the Field Investigation Report is written on a letterhead of the consultant, Malcom Piernie, Inc., and is addressed to the military officials of the Navy and Camp Pendleton. (Ex. 7 to Pls.' Opp.) The 2000 Technical Assessment is SDG&E's internal document that bears SDG&E's letterhead, produced by SDG&E. (Ex. 17 to Pls.' Opp.) Their appearance alone is enough for the Court to conclude that the reports are authentic. SDG&E does not point out any counterproof indicating mistake, fraud, or something suspicious in the appearance or content of the exhibits or the letterheads. In fact, an SDG&E employee has testified at deposition that he was aware that "Malcolm Piernie document[ed] a concern regarding the Camp Pendleton PVC piping." (Reistetter Dep. at 77:12–13, ECF No. 120-1.) In addition, the authentication requirement is satisfied where the document at issue is produced by a party in discovery and later offered by the opposing party, which was the case for the 2000 Technical Assessment. *See Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n. 12 (9th Cir. 1996).

1    Therefore, the Court declines to exclude Plaintiffs' Exhibits 7 and 17.

2

3                    **4.    Hearsay Objections**

4          Hearsay is "a statement, other than one made by the declarant while testifying at the

5    trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid.

6    801(c).  "In the absence of a procedural rule or statute, hearsay is inadmissible unless it is

7    defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay

8    exception under Rules 803, 804 or 807." *Orr*, 285 F.3d at 778.

9          For purposes of  motions for summary judgment, the focus is placed not on the

10   admissibility of the evidence's form but "on the admissibility of its contents." *Sandoval*,

11   985 F.3d at 666 (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)).  This

12   means that

13        [i]f the contents of a document can be presented in a form that would be
          admissible at trial—for example, through live testimony by the author of the
14        document—the mere fact that the document itself might be excludable
          hearsay provides no basis for refusing to consider it on summary judgment.
15

16   *Id*.

17        SDG&E has not shown that the evidence it objects to cannot be presented at trial in

18   an admissible form.  For example, Exhibit 7 is a field investigation report prepared by a

19   consultant.  SDG&E does not argue that the author of the report cannot be called to testify

20   at trial or that the contents of the document cannot be presented in a form that would be

21   admissible at trial.  Therefore, the Court does not find that the hearsay rule provides a basis

22   for excluding the objected-to evidence in its entirety.  To the extent that SDG&E intended

23   to object to only parts of the exhibits, its unexplained generalized objections are insufficient

24   to raise such an objection.  *See Sandoval*, 985 F.3d at 666.

25        Therefore, the Court denies SDG&E's evidentiary objections.

26   //

27   //

28   //

## II.      Rule 12(b)(1) Motion: Political Question Doctrine

SDG&E moves to dismiss Plaintiffs' action for lack of subject matter jurisdiction under Rule 12(b)(1), based on the political question doctrine.  "In general, the Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'" *Zivotofsky v. Clinton*, 566 U.S. 189, 194–95 (2012) (quoting *Cohens v. Virginia*, 19 U.S. 264, 404 (1821)).  The "political question doctrine" is a "narrow exception" to the Judiciary's Article III responsibility.  *Id.* at 195 (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986)).  The doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch[.]"  *Japan Whaling Ass'n*, 478 U.S. at 230.  As such, "[t]he political question doctrine concerns the jurisdictional 'case or controversy requirement' of Article III of the Constitution, . . . and the Court must address it 'before proceeding to the merits[.]'"  *Ahmed Salem Bin Ali Jaber v. United States*, 861 F.3d 241, 245 (D.C. Cir. 2017) (citing first *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974) and quoting second *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005)).  If a political question is inextricable from a case, the doctrine "prevents a plaintiff's claims from proceeding to the merits."  *Ahmed Salem Bin Ali Jaber*, 861 F.3d at 245 (citing *Baker v. Carr*, 369 U.S. 186 (1962)).

There are at least six different "formulations" for determining whether a case presents a political question that is understood to deprive a federal court of subject matter jurisdiction.  *Baker*, 369 U.S. at 217.  SDG&E argues that this case meets each of the six formulations outlined in *Baker*, which are (1) "a textually demonstrable constitutional commitment of the issue to a coordinate political department"; (2) "a lack of judicially discoverable and manageable standards for resolving it"; (3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion"; (4) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due [to] coordinate branches of government"; (5) "an unusual need for

unquestioning adherence to a political decision already made"; or (6) "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Baker*, 369 U.S. at 217. "Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence." *Id.*

Here, the question at issue is whether SDG&E was negligent in handling the Subject Gas Line or the gas that SDG&E supplied. While it is true that the Subject Explosion took place during military training, "governmental operations are a traditional subject of damage actions in the federal courts." *Koohi v. United States*, 976 F.2d 1328, 1331 (9th Cir. 1992)(collecting cases). "[N]ot even military judgments are completely immune from judicial review." *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1358 (11th Cir. 2007). Accordingly, it is necessary to examine the *Baker* formulations to determine whether the suits against SDG&E "will require [the Court] to reexamine a military judgment; and if so, whether the military judgment is the kind that warrants application of the political question doctrine." *Id.*

### A.    A Decision Constitutionally Committed to the Executive or Legislative Branch

The first *Baker* formulation excludes from judicial review certain decisions that the Constitution commits to the legislative and executive branches of the federal government. *McMahon*, 502 F.3d at 1358–59. In *McMahon*, the court held that the first *Baker* formulation did not apply to a suit against a private contractor who was "not, itself, a coordinate branch of the United States government." *McMahon*, 502 F.3d at 1359. *McMahon* arose from a plane crash during a military operation that killed three soldiers. A deceased soldier's surviving family member brought a wrongful death claim against the private contractor that owned and operated the crashed plane. The court held that the defendant needed to carry a "double burden" to invoke the first *Baker* formulation: the defendant had to "demonstrate that the claims against it will require reexamination of a

decision *by the military*" and then "demonstrate that the military decision at issue is . . . insulated from judicial review." *Id.* at 1359–60.  Finding no evidence to satisfy the defendant's dual burden, the *McMahon* court concluded that the first *Baker* formulation did not apply.  *Id.* at 1360–61 (finding that the military contract reserved responsibility for the alleged negligent operation to the defendant, and the military's duties were "relatively discrete" that did not relate to any allegations raised by the plaintiff).

Here, SDG&E has not met its burden to show that litigating Plaintiffs' claims will require a reexamination of a decision by the military.  Plaintiffs' operative pleadings allege that SDG&E did not "properly inspect" the Subject Gas Line, failed to "warn of an unreasonably dangerous condition," and did not "make [an] unreasonably dangerous condition safe[r]."  (Alires FAC ¶ 24.i, l, m; Cruz FAC ¶¶ 23.i, l, m; De La Rosa FAC ¶¶ 23.i, l, m.)  SDG&E argues that it owed no duty of care in the first place because it lacked ownership over the Subject Gas Line and never serviced it for the military.  At this stage, determining the merits of the central question—whether SDG&E owed and breached a duty of care—does not require the Court to reexamine a decision by the military.

To the extent that SDG&E relies on *Aktepe v. USA*, 105 F.3d 1400 (11th Cir. 1997), that action was brought directly against the United States, and "it was obvious, even from the complaint, that the suit would require the court to review actual, sensitive judgments made by the military." *See McMahon*, 502 F.3d  at 1362 (construing *Aktepe*).  Those facts are not present here.  This case is more similar to *McMahon*, in that resolving the negligence claims at issue would not require the Court to reexamine a military judgment.

Therefore, the first *Baker* formulation does not apply.

**B.    Judicially Discoverable and Manageable Standards**

The second *Baker* formulation excludes from judicial review cases that lack "judicially manageable standards for resolving" the merits. *Baker*, 369 U.S. at 217.  While cases involving military decisions frequently lack judicially manageable standards, the mere fact that the underlying events took place as part of an authorized military operation

17cv2433

does not make the action judicially unmanageable.  *See Koohi*, 976 F.2d at 1331 ("[T]he claim of military necessity will not, without more, shield governmental operations from judicial review.").  In *Koohi*, the Ninth Circuit held that "[a] key element in [the court's] conclusion that the plaintiffs' action is justiciable is the fact that the plaintiffs seek only damages for their injuries." *Id.* at 1332.  Here, too, Plaintiffs seek only damages for their injuries arising out of SDG&E's alleged negligence.  Determining whether SDG&E was negligent and how much damages SDG&E may owe Plaintiffs is a straightforward application of tort law that is within the expertise of the judiciary.  *See id.* ("Damage actions are particularly judicially manageable.")

SDG&E relies upon *Aktepe*, 105 F.3d at 1400, but that case is distinguishable from this action.  There, the court held that the plaintiffs' action against the United States required the court to determine "how a reasonable military force would have conducted the drill"—a question over which courts lack judicially manageable standards to resolve.  *See Aktepe*, 105 F.3d at 1404.  Here, the only issue relevant to Plaintiffs' claims against SDG&E is whether SDG&E owed a duty to Plaintiffs and, if so, whether SDG&E breached that duty.  At this point of the litigation, a decision by the military is not called into question.

## C.   Other *Baker* Formulations

SDG&E has not demonstrated that the remaining *Baker* formulations apply to this case.  The Court also notes that the United States has not moved to join this action.  "The apparent lack of interest from the United States to this point fortifies [the Court's] conclusion that the case does not yet present a political question." *McMahon*, 502 F.3d at 1365.

In sum, SDG&E has not shown that Plaintiffs' action against it raises a political question not committed to the judicial branch.  Therefore, the Court denies SDG&E's Rule 12(b)(1) motion.

**III.     Rule 56 Motion for Summary Judgment**

Having found that Plaintiffs' claims are justiciable, the Court turns to the merits of SDG&E's motion for summary judgment.

**A.     Negligence**

Plaintiffs' operative complaints raise claims of negligence against SDG&E.  (Alires FAC ¶¶ 14–25; Cruz FAC ¶¶ 13–24; De La Rosa FAC ¶¶ 13–24.)  The elements of a negligence cause of action are: " (a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury." *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996) (citing *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 834 (1992)).  SDG&E argues that Plaintiffs' negligence claim should be dismissed on summary judgment because (1) SDG&E lacks a duty of care to Plaintiffs under Rule 26 of SDG&E's tariffs, which were approved by the California Public Utilities Commission ("PUC"); (2) SDG&E did not design, install, maintain, or mark the Subject Gas Line as alleged in the operative complaint; and (3) Plaintiffs' claims are preempted under the California Public Utilities Code.

**1.     Duty of Care Under SDG&E's Tariffs Rule 26**

SDG&E first argues that under SDG&E's tariffs, it lacks any duty of care over the Subject Gas Line.  Tariffs refer collectively to the sheets setting forth the terms and conditions of a utility's services to its customers that the utility must file, maintain, and publish as directed by the PUC. *Davis v. S. California Edison Co.*, 236 Cal. App. 4th 619, 623 n.6 (2015); *see* Cal. Pub. Util. Code § 489(a).  SDG&E filed its tariffs with the PUC. (JSUMF ¶ 5.)

Rule 26 of SDG&E's tariffs states that SDG&E "shall not be responsible for the selection, installation, operation, maintenance, or condition of any Consumer Equipment or for any injuries or damages resulting therefrom."  (Rule 26, ECF No. 115-30.)  The tariffs define "Consumer Equipment" as "[a]ll equipment for receiving and utilizing gas

- 14 -

from the Company, including, but not limited to, any and all pipes, gas related fixtures, and gas-burning appliances downstream of the Service Delivery Point." (Rule 1, ECF No. 115-28.)  "Service Delivery Point" is defined as a "[p]oint where the utility's pipe connects to the customer's house line, usually the meter location." *Id.*  In sum, Service Delivery Point marks where SDG&E's responsibility for a gas line stops.

Plaintiffs argue that because the military installation is more complex than a typical customer's "house line," Rule 26 is not applicable.  Plaintiffs have not offered any support for their argument that military installations are not within the scope of Rule 26.  In contrast, SDG&E has offered evidence that both the military and SDG&E treated the master meter located on Basilone Road in the San Onofre 2 housing area in Camp Pendleton as the Service Delivery Point. (Reistetter Decl. ¶¶ 7–10, ECF No. 115-7; Wolfe Depo. 169:2–9, ECF No. 115-13.)  Further, if Plaintiffs were correct, all businesses, apartments, or any location other than a residential customer would be exempt from Rule 26's limitation of liability.  Plaintiffs have not offered an acceptable rationale that would support such a broad exemption.  The Court finds that Rule 26 applies here.  Under Rule 26, the master meter on Basilone Road was the Service Delivery Point, and all equipment downstream of the master meter was Consumer Equipment.

Having so found, the Court next turns to determine whether SDG&E has met its burden to show that there is no genuine issue of material fact as to its lack of a duty of care under Rule 26.  SDG&E produced the deposition testimony of the Marine Corps' deputy of facilities, Steven R. Wolfe, who testified that the military has owned and operated the Subject Gas Line, including on the date of the explosion. (Wolfe Depo. 158:8–13; 161:7–10, 170:10–13, 258:5–15.)  This testimony is supported by SDG&E's engineer, David P. Reistetter, who declared that the military "owns and is responsible for all gas lines and equipment located downstream of SDG&E's master meter, including the pipeline that connects to SDG&E's master meter and the Subject Gas Line." (Reistetter Decl. ¶ 10, ECF No. 115-7.)  In addition, Wolfe testified that it is the military that is and was responsible for maintaining and repairing the Subject Gas Line and that he was not aware that SDG&E

- 15 -

provided any maintenance or repair services for Camp Pendleton. (Wolfe Depo. 162:5–12, 258:16–23, 262:9–13.) Wolfe also testified that it was the military that installed the signage for the Subject Gas Line. (*Id.* 81:9–12.)

Thus, SDG&E has met its initial burden of production, and the burden passes to Plaintiffs. Plaintiffs have not pointed out to the Court specific facts that would call into doubt SDG&E's evidence. The parties also stipulate to the fact that SDG&E did not design, construct, or install the Subject Gas Line. (JSUMF ¶ 12.) The Court finds no triable issue of fact as to the application of Rule 26 and finds that SDG&E was not "responsible for the selection, installation, operation, maintenance, or condition of" the Subject Gas Line "or for any injuries or damages resulting therefrom." (Rule 26, ECF No. 115-30.)

### 2. Duty of Care Under Common Law

Plaintiffs argue that under common law, natural gas providers like SDG&E owe a duty to correct, or require correction of, a known danger in the pipeline.[1] Plaintiffs rely on *Ambriz v. Petrolane, Ltd.*, 49 Cal. 2d 470 (1957), in which the California Supreme Court held that a butane gas supplier who "[knew] the customer's line [was] defective" had a duty to "take precautions according to the circumstances." *Ambriz*, 49 Cal. 2d at 478–79. In *Ambriz*, the defendant butane gas supplier had filled the gas tank for the plaintiffs' cabin without conducting a "proper inspection . . . to see that the cabin outlets were not leaking." *Ambriz*, 49 Cal. 2d at 474. The court found that "[a]s a result of the negligence of defendants in failing to make an inspection before filling the tank, gas escaped into

---

[1] At oral argument, Plaintiffs raised a new argument that Rule 11 of SDG&E's Tariffs and Rule 22 of PUC's General Order No. 58A required SDG&E to discontinue supplying the gas to the Subject Gas Line. The Court rejects this argument. "[T]he Court need not consider issues raised for the first time during oral argument." *Makaeff v. Trump Univ., LLC*, 26 F. Supp. 3d 1002, 1007 n.2 (S.D. Cal. 2014). Plaintiffs had the opportunity to brief their argument but did not do so, and the Court declines to consider their belated argument.

17cv2433

plaintiffs' cabin, and . . . the explosion and fire occurred, proximately resulting in the death of the children and injuries to plaintiffs." *Id.* Asked whether the defendant owed a duty of care to the plaintiffs, the court found that "[t]aking all the circumstances together, including the insufficiency of the valves, the dangerous nature of the gas, the knowledge of [the defendant] and that it gave no instructions to [its customers], that the tank was filled for the first time during the year," the defendant owed and breached the duty to "take precautions according to the circumstances" about the known danger in the plaintiffs' gas system. *Id.* at 480.

### i.    Whether Plaintiffs Impermissibly Raise a New Theory

As an initial matter, SDG&E argues that the Court should decline to reach the merits of Plaintiffs' theory of liability based on *Ambriz* because Plaintiffs cannot now raise legal theories not previously raised in the pleadings. SDG&E relies on *Wasco Prod., Inc. v. Southwall Techs.*, Inc., 435 F.3d 989 (9th Cir. 2006). In *Wasco*, the plaintiff, who had not pleaded the basic elements of conspiracy in its complaint, later sought to raise a fraudulent conspiracy claim for the first time in its opposition to the defendant's motion for summary judgment. *Id.* The court held that the plaintiff's belated conspiracy claim could not proceed, based in part on Rule 9(b), which requires all allegations of fraud to be specifically pleaded. *Id.* Here, Plaintiffs have pleaded the basic elements of negligence in their operative complaints. (Alires FAC ¶¶ 14–25; Cruz FAC ¶¶ 13–24; De La Rosa FAC ¶¶ 13– 24.) Namely, the complaints allege that SDG&E did not "properly inspect" the Subject Gas Line, did not "warn of an unreasonably dangerous condition," and failed to "make unreasonably dangerous condition safe." (Alires FAC ¶ 24.i, l, m; Cruz FAC ¶¶ 23.i, l, m; De La Rosa FAC ¶¶ 23.i, l, m.) These allegations are aligned with the theory of liability under *Ambriz*. Based on the above, the Court finds the holding in *Wasco* inapplicable to this action.

//

//

## ii.      Whether Plaintiffs' Claims are Preempted

The question is whether section 1759 of the California Public Utilities Code and SDG&E's tariffs preempt Plaintiffs' claims.  The California Public Utilities Code provides,

> [n]o court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court.

Cal. Pub. Util. Code § 1759 (West).  At the same time, the Public Utilities Code allows actions for damages to be filed against "[a]ny public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission."  Cal. Pub. Util. Code § 2106. This creates a tension: "Section 1759 defines and limits the power of courts to pass judgment on, or interfere with, what the commission does.  Section 2106, on the other hand, confirms the full power of the courts to pass judgment on what utilities do."  *Cundiff v. GTE California Inc.*, 101 Cal. App. 4th 1395, 1406 (2002).

The California Supreme Court has held that section 1759 has "primacy" over section 2106, which means that actions permitted by section 2106 must "be construed as *limited* to those situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies."  *San Diego Gas & Elec. Co. v. Superior Court (Covalt)*, 13 Cal. 4th 893, 917 (1996).  To make that determination, courts must ask: (1) whether the PUC had the authority to adopt a regulatory policy on the subject matter of the litigation; (2) whether the PUC has exercised that authority; and (3) whether judicial action would hinder or interfere with the PUC's exercise of regulatory authority.  *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011) (construing *Covalt*, 13 Cal. 4th at 923–43).

- 18 -

17cv2433

Here, Plaintiffs allege that SDG&E violated its common-law duty of care outlined in *Ambriz*. Plaintiffs' claims based on *Ambriz* fall within "the broad language of Public Utilities Code § 2106, which permits private suits against public utilities for violations of 'any law of this State.'" *See Kairy*, 660 F.3d at 1151 (citing Cal. Pub. Util. Code § 2106). Thus, the Court must apply the *Covalt* factors to resolve the potential conflict between the PUC's statutory jurisdiction and Plaintiffs' claims raised under *Ambriz*.

### a.     PUC Authority to Regulate Rates

The first *Covalt* factor requires the Court to decide if the PUC has the authority to adopt a regulatory policy on the subject matter of this litigation—that is, the limitation of a public utility's liability as a part of regulating the rates of the public utility's service. The PUC "has far-reaching duties, functions, and powers, and . . . the California Constitution confers broad authority on the commission to regulate utilities." *Kairy*, 660 F.3d at 1151 (citing *Covalt*, 13 Cal. 4th at 914–15). Moreover, the state statute specifically obligates the PUC to regulate the rates that a public utility may charge and the rules, contracts, and privileges that relate to the rates or service. Cal. Pub. Util. Code § 761. "The commission is specifically empowered to require utilities to file tariff schedules containing rates, charges and classifications, 'together with all rules, contracts, privileges, and [facilities] which in any manner affect or relate to rates, tolls, rentals, classifications, or service.'" *Waters v. Pac. Tel. Co.*, 12 Cal. 3d 1, 6 (1974) (quoting Cal. Pub. Util. Code. § 489(a)); *see also Hartwell Corp. v. Superior Court*, 27 Cal. 4th 256, 270 (2002) ("The PUC's most obvious regulatory authority includes the regulation of rates.")

Further, "[a] public utility's tariffs filed with the PUC have the force and effect of law." *Dollar–A–Day Rent–A–Car Sys., Inc. v. Pac. Tel. & Tel. Co.*, 26 Cal. App. 3d 454, 457 (Ct. App. 1972). This means that once the tariff is approved, "it is the PUC, empowered by the Legislature, and not the parties to the transaction, which by approving the tariff fixed the terms and conditions upon [the transaction]." *Trammell v. W. Union Tel. Co.*, 57 Cal. App. 3d 538, 550 (Ct. App. 1976).

In *W. Union Tel. Co. v. Esteve Bros. & Co.*, 256 U.S. 566 (1921), the Supreme Court explained the rationale behind the inclusion of a liability limitation provision in tariffs setting cable and telegram rates:

> The limitation of liability was an inherent part of the rate. The company could no more depart from it than it could depart from the amount charged for the service rendered.

*W. Union Tel. Co. v. Esteve Bros. & Co.*, 256 U.S. 566, 571 (1921).   Similarly, the California Supreme Court has recognized that "general principles which might govern disputes between private parties are not necessarily applicable to disputes with regulated utilities," whose "means of limiting its liability for ordinary negligence has been considered and approved by [PUC], and taken into account in setting its rates." *Waters*, 12 Cal. 3d at 10.   Here, too, Rule 26's limitation of SDG&E's liability has been approved by the PUC as an inherent part of the rate that SDG&E charges.

In sum, both the general regulatory powers of the PUC and specific authorization by law empower the PUC to regulate the limitation of a public utility's liability, as a part of its authority to regulate the utility's rates and terms of service.

### b.  PUC Exercise of Its Authority to Regulate

The second *Covalt* factor asks whether the PUC has exercised its authority. The PUC's approval of a regulated utility's tariff rules is an exercise of its authority. *Davis v. S. California Edison Co.*, 236 Cal. App. 4th 619, 642 (2015); *accord N. Star Gas Co. v. Pac. Gas & Elec. Co.*, No. 15-CV-02575-HSG, 2016 WL 5358590, at *10 (N.D. Cal. Sept. 26, 2016).   Here, SDG&E has filed its tariffs with the PUC.  (JSUMF ¶ 5.)  It is not disputed that the PUC approved SDG&E's tariffs, including Rule 26.  The PUC has exercised its authority to regulate the rates and the attendant scope of liability of the public utility's service.

//

//

c.     **Hindrance to PUC's Exercise of Regulatory Authority**

The final *Covalt* factor requires the Court to determine whether the judicial action would hinder or interfere with the PUC's exercise of regulatory authority.  In *Waters v. Pac. Tel. Co.*, 12 Cal. 3d 1(1974), the California Supreme Court held that allowing a suit for damages against the public utility would "thwart" the PUC's regulatory authority, where the PUC had approved a tariff rule that limited the utility's liability for ordinary negligence.  *Id.* at 10.  Construing *Waters*, the *Covalt* court explained that

> an action for damages against a public utility pursuant to section 2106 is barred by section 1759 not only when an award of damages would directly contravene a specific order or decision of the commission, i.e., when it would "reverse, correct, or annul" that order or decision, but also when an award of damages would simply have the effect of undermining a general supervisory or regulatory policy of the commission, i.e., when it would "hinder" or "frustrate" or "interfere with" or "obstruct" that policy.

*Covalt*, 13 Cal. 4th at 918 (citing *Waters*, 12 Cal. 3d at 3–4, 11).

Here, similar to the outcome in *Waters*, allowing Plaintiffs' action for damages tied to SDG&E's alleged negligence concerning the Subject Gas Line would directly contradict Rule 26, which became a part of the PUC's policy setting the rates for the natural gas utility upon the PUC's approval of Rule 26.  Rule 26 excludes from SDG&E's liability personal injury that stems from any Consumer Equipment.  The evidence establishes that the Subject Gas Line was owned by the military, and Rule 26 waives SDG&E's liability over such Consumer Equipment.  *See supra* Part III.A.1.  Therefore, allowing Plaintiffs' claim for damages would contradict the PUC's regulatory policy.

This case is different from cases in which courts have held that a private right of action would not interfere with the PUC's authority.  For example, in *Wilson v. S. California Edison Co.*, 234 Cal. App. 4th 123, 151 (2015), the court held that a negligence action against electrical utility over stray voltage was not barred "[in] the absence of any indication that the PUC has . . . regulated the issue of stray voltage, and without any evidence that stray voltage cannot be mitigated without violating the PUC's regulation." *Id.*  Here, by approving SDG&E's tariffs, the PUC has exercised its authority to regulate

- 21 -

the rates and the attendant scope of liability of the provision of natural gas.  Rule 26 of SDG&E's tariffs absolves SDG&E of the precise liability that Plaintiffs seek to enforce here—the liability for personal injury resulting from the condition or maintenance of equipment not owned by SDG&E.  Therefore, this action is more analogous to *Waters* than to *Wilson*.  A damage award in this action would conflict with the PUC's policies and interfere with its regulation of natural gas utilities.

In sum, all three *Covalt* factors require the Court to conclude that section 1759 of the California Public Utilities Code preempts Plaintiffs' claims.

### iii.   Plaintiffs' Remaining Arguments

At oral argument, Plaintiffs' counsel argued that because Plaintiffs' theory of liability is not focused on the "selection, installation, operation, maintenance, or condition" of the Subject Gas Line, Plaintiffs' claims are not within the scope of Rule 26 and therefore not preempted.   The Court rejects this argument because Plaintiffs' core theory of liability—that SDG&E owed, and breached, a duty of care "to design, install, maintain and mark the gas lines on Camp Pendleton"—is squarely within the scope of Rule 26.[2]

Plaintiffs' counsel further argued that SDG&E should be held liable under *Ambriz* for its failure to discontinue the supply of gas to the Subject Gas Line, inspect the Subject Gas Line, or correct the dangerous conditions of the Subject Gas Line.  The Court rejects this argument for several reasons.  First, Rule 11 of SDG&E's tariffs disclaims SDG&E's "responsibility of inspecting or repairing the customer's facilities or other equipment or any part thereof."   (SDG&E Tariffs Rule 11.B.6, http://regarchive.sdge.com/tm2/pdf/

---

[2] Plaintiffs' operative pleadings allege that SDG&E owed a duty of care "to design, install, maintain and mark the gas lines on Camp Pendleton" and that "[a]s a direct and proximate result of Defendants' conduct in the design, installation, maintenance and marking of the subject gas line, the subject gas line created a dangerous condition for Marines training in military vehicles," thereby injuring Plaintiffs.  (Alires FAC ¶¶ 16, 18, 21, 23; Cruz FAC ¶¶ 15, 17, 20, 22; De La Rosa FAC ¶¶ 15, 17, 20, 22.)

GAS_GAS-RULES_GRULE11.pdf.)   Rule 11, along with other SDG&E gas rules approved by the PUC, is a part of the PUC's policy setting the rates for the natural gas utility.   For the same reasons discussed above, section 1759 of the California Public Utilities Code preempts Plaintiffs argument that SDG&E failed to inspect the Subject Gas Line.  *See supra* Part III.A.2.ii.

Second, preemption aside, no reasonable fact finder could conclude that SDG&E had knowledge of the condition of the Subject Gas Line such that it was required to discontinue supplying gas to the Marine Corps base.  *See Anderson*, 477 U.S. at 248 (holding that summary judgment may not be defeated unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").   SDG&E points to Plaintiffs' own expert's conclusion that "the rupture of the [Subject Gas Line] was preventable primarily if adequate earthen coverage had existed in accordance with the Camp Pendleton Requirements and, secondarily, had adequate Pipeline markings and signage been installed."  (Witness Statement of John A. Williams ¶ 1.0.0.2, Ex. B to Williams Decl., ECF No. 120-54 at 58.)  Based on this evidence, SDG&E reasons that the only material fact issue relevant to determining whether SDG&E is liable under *Ambriz* is whether SDG&E knew the Subject Gas Line was inadequately marked or buried.   The Court agrees.  To prove SDG&E's knowledge, Plaintiffs point to an incident that took place a few months before the Subject Explosion in which a bulldozer struck and cracked the Subject Gas Line.   Plaintiffs argue that SDG&E must have been placed on notice of the inadequate marking or burying of the Subject Gas Line then, given the standard procedure of the Marines that would have required calling SDG&E anytime there is a digging operation at the base.[3] Plaintiffs also rely on an incident report documenting the bulldozer's

---

[3] Plaintiffs' evidence of the alleged standard procedure consists of (1) a deposition testimony of Reistetter, who testified that SDG&E is "a member of a one-call system," also known as the "Dig Alert" or "Call 811"   (Reistetter Dep. at 64:20–25, ECF No. 120-1); and (2) an emergency contact list that includes the phone numbers for SDG&E Dispatch and the 811 number (ECF No. 120-16).

contact with the Subject Gas Line, which mentions SDG&E in two places: "REQUESTING SDGE ON GAS SIDE" and "SDGE AT 52 AREA GAS STATION." (ECF No. 120-19.)  SDG&E offers evidence that its own records are devoid of receiving notice about the bulldozer incident or that SDG&E was involved in, or was requested to conduct, any repairs or inspection of the Subject Gas Line following the bulldozer incident. (Engel Decl. ¶ 12; Declaration of Eileen Salvaggio ¶¶ 6–8, ECF No. 115-9.)  The evidence, read in the light most favorable to Plaintiffs, would at best show that someone called the 811 number about the bulldozer incident, and that SDG&E was present at a gas station in "52 area" at the day of the incident.  Plaintiffs do not offer affidavit, declaration, or deposition testimony of a witness who has personal knowledge of the incident report that could provide more explanation as to the significance of the alleged call to SDG&E on the day of the bulldozer incident. Speculation cannot create a genuine issue of material fact. *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).  The evidence simply does not allow a reasonable factfinder to conclude, without engaging in speculation, that SDG&E was placed on notice of an inadequate marking, burying, or any other condition of the Subject Gas Line such that it was required to discontinue supplying gas to the Marine Corps base.  Plaintiffs have not shown that they can defeat summary judgment, even if the Court were to assume that their claims are not preempted.

Therefore, the Court grants summary judgment on Plaintiffs' negligence cause of action.

**B.    Negligence Per Se**

SDG&E argues that Plaintiffs' negligence per se theory should be dismissed on summary judgment.  Having found that Plaintiffs' negligence claims are preempted under the California Public Utilities Code, the Court need not reach the issue.

//

//

//

17cv2433

1

**CONCLUSION**

2   For the reasons stated above, the Court **DENIES** Defendant's Rule 12(b)(1) Motion

3 to Dismiss raised under the political question doctrine. (ECF No. 115.)

4   The Court **GRANTS** Defendant's Request for Judicial Notice.  (ECF No. 115-10.)

5   The Court **DENIES** Defendant's Evidentiary Objections.  (ECF No. 122-1.)

6   The Court **GRANTS** Defendant's Motion for Summary Judgment.  (ECF No. 115.)

7   **IT IS SO ORDERED.**

8

9 **DATED: February 19, 2021**

Hon. Cynthia Bashant
United States District Judge